UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. 15-10300 (DPW) |
| ) | |
| v.  ) | |
| ) | Violations: |
| (1) JOHN FIDLER, ) | |
| (2) DANIEL REDMOND, ) | 18 U.S.C. § 1951 (Hobbs Act Extortion) |
| (3) ROBERT CAFARELLI, ) | 18 U.S.C. § 2 (Aiding & Abetting) |
| (4) MICHAEL ROSS, and ) | 18 U.S.C. § 981 and 28 U.S.C. § 2461 |
| (5) MARK HARRINGTON ) | (Extortion Forfeiture) |
| Defendants. ) | |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

At all times material to this Indictment:

1.      The International Brotherhood of Teamsters, Teamsters Local 25 ("Local 25"), was a labor organization which represented over 11,000 employees in, among other things, the transportation, movie, and moving and trade show industries throughout New England.

2.      The primary purpose of Local 25, like any labor organization, is to negotiate and administer collective bargaining agreements with employers. Under these collective bargaining agreements, wages are paid directly by the employer to the employee.

3.      Beginning in the spring of 2014, Company A, a non-union production company, began scouting locations to film a reality television show in Boston. Company A had never filmed in Boston before. A stage location was set up in Woburn, Massachusetts, and a number of filming locations were chosen in and around the Boston area. In order to film in the City of Boston, permits must be applied for and approved by the City of Boston with the assistance of the Boston Film Bureau.

4. In May 2014, with the necessary permits from the City of Boston, Company A commenced filming at locations in the City of Boston including the Museum of Science, Fenway Park, and Cheers. Company A had the required permits and was scheduled to conduct further filming in the City of Boston, including at the Omni Parker House hotel, Menton restaurant, and Emerson College, in June 2014.

5. Company A was not a signatory to any collective bargaining agreement with Local 25. Company A hired its own employees ("the Crew"), including drivers, to produce and participate in the filming of the show and did not need any work performed by Local 25.

6. On or about June 5, 2014, defendant DANIEL REDMOND ("REDMOND"), a member of Local 25, approached the Crew as they were filming at the Revere Hotel in Boston, and demanded that members of Local 25 be hired as drivers. REDMOND insisted that one of the producers on set speak with defendant MARK HARRINGTON ("HARRINGTON"), the secretary-treasurer of Local 25. HARRINGTON advised the producer that he did not care about Company A and that all he cared about was that some of his guys get hired on the show. The producer explained that all of the drivers had been hired and there was no work for Local 25 to perform. REDMOND thereafter demanded to know where else the Crew would be filming and threatened to shut the production down that night. During several subsequent telephone calls that same day, HARRINGTON and another union official warned the producer that if Company A did not make a deal with Local 25, they would start to follow them and picket.

7. On or about June 9, 2014, a representative from the City of Boston called the Omni Parker House to inform it that Local 25 was planning to picket Company A's filming at the Omni Parker House on June 10, 2014. The City of Boston representative made similar calls to Menton.

2

8. On or about June 9, 2014, an individual from the Omni Parker House notified Company A that, despite their prior agreement, the Omni Parker House would no longer permit Company A to use its location to film because the hotel did not want to be associated with a Local 25 picket. As a result, Company A found a new location for filming outside the City of Boston.

9. In the early morning hours on June 10, 2014, a producer for Company A had a conversation with a Local 25 official. The Local 25 official stated that Local 25 was aware that Company A was getting ready to film at Restaurant A in Milton and Local 25 would be sending fifty guys to picket. As a result of that conversation, Company A hired a police detail for the filming.

10. Restaurant A is a restaurant located in Milton, Massachusetts. At around 9:00 a.m. on June 10, 2014, defendants REDMOND, HARRINGTON, JOHN FIDLER ("FIDLER"), ROBERT CAFARELLI ("CAFARELLI") and MICHAEL ROSS ("ROSS") showed up at Restaurant A. REDMOND, HARRINGTON, FIDLER, CAFARELLI and ROSS are all members of Local 25. Two or three of the defendants entered the production area and began walking in lockstep toward the doors of the restaurant where they chest-bumped and stomach-bumped Crew members in an attempt to forcibly enter the restaurant.

11. Throughout the morning, the defendants continued to use and threaten to use physical violence against members of the Crew and others. The defendants yelled profanities and racial and homophobic slurs at the Crew and others. The defendants blocked vehicles from the entryway to the set and used actual physical violence and threats of physical violence to try and prevent people from entering the set. On one occasion, the defendants prevented a food delivery truck from delivering food. The defendants were also observed by the Crew standing in

close proximity to cars belonging to the Crew, nine of which were later found to have had their tires slashed.

## COUNT ONE
### (Conspiracy to Extort)

12. The allegations set forth in paragraphs 1 through 11 are hereby realleged and incorporated as if fully set forth herein.

13. Between on or about May 1, 2014, through October 31, 2014, both dates being approximate and inclusive, in Boston and Milton, and elsewhere within the District of Massachusetts, defendants

> (1) JOHN FIDLER,
> (2) DANIEL REDMOND,
> (3) ROBERT CAFARELLI,
> (4) MICHAEL ROSS, and
> (5) MARK HARRINGTON,

together with others, known and unknown to the Grand Jury, conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and their co-conspirators agreed to obtain property of Company A, a reality television production company, to wit: money to be paid as wages for imposed, unwanted, and unnecessary and superfluous services; with the consent of such entity, their officers and agents, which consent was induced by the wrongful use of actual and threatened force, violence, and fear of economic and physical harm to Company A and others.

It was part of the conspiracy that the defendants and their co-conspirators agreed to exert influence through the wrongful use of actual and threatened force and fear of physical and economic harm to Company A and others, in order to obtain wages for such imposed, unwanted, and unnecessary and superfluous services for themselves and other third parties.

In violation of Title 18, United States Code, Section 1951.

## COUNT TWO
### (Attempted Extortion of Company A)

14. The allegations set forth in paragraphs 1 through 11 are hereby realleged and incorporated as if fully set forth herein.

15. Between on or about May 1, 2014, and continuing through October 31, 2014, both dates being approximate and inclusive, in Boston and Milton, and elsewhere within the District of Massachusetts, defendants

> (1) JOHN FIDLER,
> (2) DANIEL REDMOND,
> (3) ROBERT CAFARELLI,
> (4) MICHAEL ROSS, and
> (5) MARK HARRINGTON,

together with others, known and unknown to the Grand Jury, obstructed, delayed and affected commerce, and the movement of articles and commodities in commerce, by extortion, and attempted to do the same, in that the defendants and others known and unknown to the Grand Jury attempted to obtain property of Company A, a reality television production company, to wit: money to be paid as wages for imposed, unwanted, and unnecessary and superfluous services; with the consent of Company A, its officers and other agents, which consent was induced by the wrongful use of fear of physical and economic harm to Company A and others, in order to obtain wages for such imposed, unwanted, and unnecessary and superfluous services for themselves, their friends and other third parties.

In violation of Title 18, United States Code, Sections 1951 and 2.

## FORFEITURE ALLEGATIONS

The Grand Jury further charges that:

1. Upon conviction of one or more of the offenses charged in Counts One and Two of this indictment, the defendants

>    (1) JOHN FIDLER,
>    (2) DANIEL REDMOND,
>    (3) ROBERT CAFARELLI,
>    (4) MICHAEL ROSS, and
>    (5) MARK HARRINGTON,

shall forfeit to the United States of America, jointly and severally, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

2. If any of the property described in paragraph 1 above, as a result of any act and omission of the defendants --

>    a. cannot be located upon the exercise of due diligence;
>    b. has been transferred or sold to, or deposited with a third party;
>    c. has been placed beyond the jurisdiction of this Court;
>    d. has been substantially diminished in value; or
>    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 981(b)(1)(A) and Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property listed in paragraph 1 hereof.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*[signature]*
FOREPERSON

*[signature]*
LAURA J. KAPLAN
KRISTINA E. BARCLAY
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: ~~September~~ October 2015
Returned into the District Court by the Grand Jurors and filed.

*Kelleyanne Moore* 10:55am
Deputy Clerk

8